[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 349 
The plaintiff's right to recover in this case, depends wholly upon the construction to be given by the court to the terms of his lease. The lease conveys to him "the water-right in front of the bulkhead, extending from the pier at the foot of Vesey-street to the short pier between Vesey and Barclay streets, including all the interest of the *Page 350 
lessors in the said two piers and bulkheads, which consist of one-half the pier at the foot of Vesey-street, being the entire northerly side of the same, and the southerly half of the pier next north of Vesey-street." The wharfage collected by the defendant, and for which this judgment was recovered, was not collected upon any of the piers leased to the plaintiff, if the strict letter of the lease is to govern. But the plaintiff contends, and I think his lease will bear such a construction, that the parties to it contemplated an extension of the piers so leased to him during the continuance of the lease; and if they were so extended, he insists that he is entitled to the benefit of it. As evidence of this, the plaintiff, after covenanting to keep the piers in good repair during the continuance of the lease, also obligated himself to do the same with all extensions which might be made to the said piers during the said term. In another clause he further covenanted to extend the short pier between Vesey and Barclay streets one hundred feet beyond its present length, aud to build the same in a substantial and workmanlike manner, at his own expense, provided that the consent of the common council could be obtained for that purpose. These two clauses clearly show that the parties to the lease contemplated an extension of the piers, and which extension would embrace longer piers, or a greater extent of wharves than those originally described in the lease. The question arises, how far did the parties have in contemplation the extension of these piers, and for whose benefit were they to be? To determine this we must not only look at the wording of the lease, but to the situation of the contracting parties, and the subject matter of the contract. There is no limit fixed to their extension by the words of the lease, and the corporation of the city had a right at any time to order an extension of the piers. The pier extending the entire northerly side of Vesey-street they ordered to be extended three hundred feet long and thirty-five feet wide into the Hudson river. This was the same pier leased to the plaintiff, and instead of being six *Page 351 
hundred feet long, as it was when it was leased to him, in its extended form was nine hundred feet. The whole interest in it (except what passed by the lease) belonged to the lessors in consequence of their being the owners of the lots opposite to it, and had they not leased it for a term of years they would have been entitled to collect wharfage from all vessels stopping at it. If then they leased to the plaintiff all their interest in the said pier for eight years, and if it could, at any time during that period, be extended by the common council of the city, by which that interest became more valuable, I see nothing in the terms of the lease to prevent that interest passing to the lessee for the term of the lease. In no other way could all their interest in that pier be conveyed to the plaintiff. To hold a contrary doctrine, would be to hold that they retained a portion of their interest in that pier, instead of conveying it all to the plaintiff by the lease. But when we look at the lease, and find there that the parties contemplated an extension of the piers, and that it might happen during the continuance of the lease, and that with regard to one of them it was provided that the plaintiff should make it at his own expense, and with regard to all that he should keep them in repair, to what other conclusion can we come, except that the parties intended that the plaintiff should derive the benefit from these extensions, provided they were made. If not, why mention them at all in the lease? The plaintiff, by that instrument, was not treating for the fee of the land, or expecting to acquire it. He was contracting for the rents and profits of it for eight years; and where a party is thus situated, all covenants by which he obligates himself to expend money or labor on the premises contracted for, are supposed to be done for the benefit he will derive from such expense and labor during the continuance of the lease. To give to the lease any other construction, would be to say that the plaintiff contracted to bear all these burdens, without the expectation of reaping any benefit therefrom — a most absurd and unjust conclusion, *Page 352 
and one to which I hope this court will never arrive. If the wording of the lease is closely scrutinized, it will be easy to see how much expense the plaintiff was willing to incur during its continuance, and that was the extending the short pier between Vesey and Barclay streets one hundred feet. If the lessors wished to bind him to make any others at his own expense, it was easy to have inserted another clause to that effect. And yet they were not ignorant that others might be made, and they bound him in the lease to keep all extensions which might be made, during its continuance, in good repair. Another thing, they suffered him to go on and pay taxes and assessments upon this extension, the same as upon the other piers upon which he collects wharfage, and yet they insist that he is bound by the lease to do this without reaping any benefit from it. Not only do I consider such a construction unjust to the plaintiff, but at war with the intention of the parties at the time of the execution of the lease, so far as that intention can be gathered from the terms of the lease, the situation of the contracting parties, and the subject matter of the contract. It may be, and no doubt is the fact, that neither party at the time the lease was executed anticipated that so great an extension of the piers would be made during the continuance of the lease, but this does not alter their legal rights. It was within the contingencies contemplated by their contract, and could be made, and if so, the lessors should have taken care (if such was the understanding) to have bound the plaintiff to make all extensions, or provided that he should reap no benefit from any not made at his expense. Not having done so, the plaintiff is entitled to the use, enjoyment and benefit arising from all extensions made during the term of his lease; and it was proper and just that the lease should provide, as it does, that while it lasted, he should keep all extensions which might be made in repair at his own expense.
The judgment of the superior court ought to be affirmed. *Page 353 
RUGGLES, GARDINER, JOHNSON and WELLES, Js., concurred. EDMONDS, J., dissented. JEWETT, J., did not hear the argument.
Judgment affirmed.